

NG

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 15-CV-5746 |
| ) | |
| v. ) | Judge Charles R. Norgle |
| ) | |
| RONALD M. GOLDBERG, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The United States of America (the "United States" or "Government") brings this action against Defendant Ronald M. Goldberg ("Goldberg") pursuant to 26 U.S.C. § 7405(b), seeking to recover what it claims was an erroneous tax refund issued to Goldberg in the amount of $276,658.39. Before the Court is the United States' motion for summary judgment. For the reasons that follow, the motion is granted.

### I. BACKGROUND

On September 29, 2004, the Internal Revenue Service ("IRS") assessed a deficiency in tax against Goldberg in the amount of $507,342.00 for the 1994 income tax year. The IRS also assessed $522,020.09 in interest against Goldberg, representing the amount of interest accrued on the additional tax since April 15, 1995, the original due date of the 1994 return. In 2006, Goldberg filed a petition in the United States Tax Court (the "Tax Court") seeking abatement of the interest that had accrued since April 15, 1995. On June 19, 2013, the Tax Court entered a final order granting Goldberg an abatement of interest under Internal Revenue Code ("I.R.C.") § 6404 for the ninety-day period between December 12, 2000 and March 12, 2001, totaling $18,489.26. See Plaintiff's Statement of Material Facts ("Pl.'s SOMF"), Ex. 5, Goldberg v.

Commissioner of Internal Revenue, Case No. 23259-06 [hereinafter "Tax Court Decision"]; see also Pl.'s SOMF, Ex. 1 ¶ 21(a). Goldberg did not appeal or otherwise challenge the Tax Court Decision.

On September 13, 2013, the United States Treasury issued a tax refund check to Goldberg in the amount of $276,658.39 (the "Check") for the 1994 tax year. On September 23, 2013, Goldberg cashed or deposited the Check into his bank account. At the time that Goldberg cashed or deposited the Check he had an unpaid balance due for the 1994 tax year in the amount of $288,568.75 for taxes, penalties, and interest. The Declaration of IRS Revenue Officer Alex Porrata ("Porrata") states that the entire amount of the Check issued to Goldberg was the result of erroneous adjustments made to Goldberg's account by an IRS employee who was attempting to implement the Tax Court Decision. Pl.'s SOMF, Ex. 1 ¶ 18.

On October 15, 2014, the IRS sent Goldberg a letter stating that he had received "the following refund in error: $276,658.39, dated September 13, 2013, for tax year 1994. The refund includes interest of $79,247.22." Pl.'s SOMF, Ex. 3 ¶ 21. On December 10, 2014, the IRS sent Goldberg a letter stating that "a portion of the refund amount was incorrect. The correct amount should have been $24,932.15. We overpaid you $251,726.24." Id. ¶ 23. On March 30, 2015, the IRS sent Goldberg a letter stating that "the amount owed back to the government for [the] erroneous refund is $263,821.23." Id. ¶ 26. Goldberg received these letters but did not comply with the IRS's demand.

On June 29, 2015, the United States commenced this suit to recover monies it claims were erroneously refunded to Goldberg. The United States claimed in its original Complaint that the amount erroneously refunded to Goldberg was $251,726.24. On September 15, 2016, the

United States filed its First Amended Complaint, claiming that the amount erroneously refunded was the full amount of the Check, $276,658.39.

On June 2, 2017, the United States filed its motion for summary judgment presently before the Court. On June 26, 2017, Goldberg filed a motion to extend the briefing schedule for the United States motion for summary judgment. On June 28, 2017, Goldberg filed a motion to stay proceedings until the resolution of the appeal in a related case. Goldberg v. United States of America, Case No. 16-3032 (7th Cir). The Court's June 29, 2017 Order granted Goldberg's motion to stay and extended the briefing schedule, such that Goldberg's response was due on or before July 5, 2017. Goldberg failed to comply with briefing schedule set forth in the Court's June 29, 2017 Order, and as of the date of this Order, he has failed to file his response.

In Case No. 16-3032, Goldberg appealed the Court's July 1, 2016 Order in Goldberg v. United States of America, Case No. 15-CV-8879, in which the Court dismissed his claims against the United States with prejudice. In Case No. 15-CV-8879, Goldberg claimed that the IRS had wrongfully assessed additional taxes against him for the 1994 tax year—the same assessment of taxes involved in the instant case. In its July 1, 2016 Order, the Court concluded that it lacked jurisdiction to hear Goldberg's claim for a refund brought under 26 U.S.C. § 7422 because he failed to exhaust the administrative process for claiming a refund before filing suit. Goldberg, Case No. 15-CV-8879, Dkt. 32. The Court also concluded that Goldberg failed to state a viable claim under § 7433 because the statute provides a remedy only for wrongful actions in connection with the *collection* of taxes, not the wrongful *assessment* of taxes as alleged by Goldberg. Id.

On January 31, 2018, the Seventh Circuit affirmed the Court's July 1, 2016 Order dismissing Goldberg's claims. Goldberg, Case No. 16-3032. On February 2, 2018, the United

3

States filed a motion to lift the stay in the instant case. On February 21, 2018, the Court granted the United States' motion to lift the stay.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id.

### B. Goldberg's Failure to Respond

As an initial matter, the Court addresses Goldberg's failure to respond to the United States' motion for summary judgment. Local Rule 56.1(a)(3) provides that a party moving for summary judgment must serve and file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local Rule 56.1(b)(3) provides that a party opposing a motion for summary judgment must serve and file "a concise response to the movant's statement" of material facts.

4

Local Rule 56.1(b)(3) further provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

The Seventh Circuit has repeatedly upheld the provisions set forth in Local Rule 56.1(b)(3), holding that when a "party opposing summary judgment fails to respond to the facts set out by the movant, the court may assume those facts to be admitted and use them in determining whether the movant is entitled to judgment as a matter of law." LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 389 (7th Cir. 1995); see also Cracco v. Vitran Exp., Inc., 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." (internal citations omitted)). However, an opposing party's silence—in failing to respond to the movant's statement of material facts—must "be weighed *in light of other evidence* rather than leading directly and without more to the conclusion of guilt or liability." Seguban, 54 F.3d at 391 (emphasis in original).

Here, the United States has filed its Local Rule 56.1 Statement of Material Facts and Goldberg has failed to file his response. Thus, the Court deems as admitted the facts set forth by the United States. Following the Seventh Circuit's direction in Seguban, the Court proceeds with its analysis as to whether these facts, in light of other evidence, entitle the United States to judgment as a matter of law.

C.  **The Full Amount of Goldberg's September 23, 2013 Refund Payment was an Erroneous Refund**

Section 7405 of the Internal Revenue Code provides that "[a]ny portion of a tax imposed by this title which has been erroneously refunded…may be recovered by civil action brought in the name of the United States." 26 U.S.C. § 7405(b). Section 7405 codifies the common law

5

right of the United States to recover "money wrongfully or erroneously paid from the public treasury." U.S. v. Wurts, 303 U.S. 414, 416 (1938) (holding that independent of statutory authority, "[t]he Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid."). To prevail on an erroneous refund claim, the Government must show: (1) that a refund was paid to the taxpayer, (2) the amount of the refund, (3) the Government's action is timely, and (4) the taxpayers were not entitled to the refund which the Government seeks to recover. United States v. Commercial Nat. Bank of Peoria, 874 F.2d 1165, 1169 (7th Cir.1989). The Government's action under § 7405 is timely when "such suit is begun within 2 years after the making of such refund," but the suit may be brought at any time within five years of the making of such refund "if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." 26 U.S.C. § 6532. The Seventh Circuit has elaborated that the phrase "making of a refund" in § 6532 refers to "the date when the check cleared the Federal Reserve and payment to the taxpayer was authorized by the Treasury." U.S. v. Greene-Thapedi, 398 F.3d 635, 639 (7th Cir. 2005).

Here, the record shows that the United States Treasury issued a tax refund check to Goldberg in the amount of $276,658.39 on September 13, 2013, and that Goldberg cashed or deposited the full amount of the Check on September 23, 2013. Further, the United States filed the present action against Goldberg on June 29, 2015, within two years of the date that he cashed or deposited the Check. Thus, the United States has established the first three elements of its claim. The more complex matter, however, is whether Goldberg was entitled to the refund of $276,658.39.

The United States argues that Goldberg was not entitled to the refund of $276,658.39 because on September 23, 2013—the date the refund was made—he owed the IRS $288,568.75

6

for taxes, penalties, and interest, without taking into account the erroneous refund itself. The Declaration of IRS Revenue Officer Porrata is informative on this matter. Porrata explains that the Tax Court Decision entitled Goldberg to an abatement of interest totaling $18,489.26, reflecting the amount of interest that would have accrued on Goldberg's 1994 account from December 12, 2000, through March 12, 2001. Porrata states that in September 2013, an IRS employee made adjustments to Goldberg's 1994 account in an attempt to implement the abatement issued by the Tax Court Decision. However, instead of abating interest in the amount of $18,489.26, the IRS employee erroneously created and applied two credits to Goldberg's 1994 account in the amount of $158,794.18 and $35,486.41, and gave the credits an effective date of April 15, 1995. Porrata further explains that the erroneous credits set into motion a number of derivative errors, including erroneous abatements and transfers of non-existent overpayments, which resulted in the erroneous refund to Goldberg in the amount of $276,658.39. Porrata states that the IRS did not discover the two erroneous credits until September 2014, at which point it attempted to correct Goldberg's 1994 account and all of the derivative errors.

Porrata concedes that the IRS cannot *erase* adjustments made to an account; rather, it can only *reverse* the adjustments. Therefore, the IRS is unable to prepare a retrospective transcript of Goldberg's 1994 account showing what the unpaid balance should have been on September 23, 2013. However, using computer software, the IRS is able to model account balances as of a specific date. Using this method, Porrata computed Goldberg's unpaid balance on September 23, 2013, as if the correct abatement amount of $18,489.26 had been applied, rather than the two erroneous credits of $158,794.18 and $35,486.41. Porrata concluded that as of September 23, 2013, Goldberg owed the IRS a total of $288,568.75, exclusive of the erroneous refund.

The Court notes that nothing in the record contradicts the above facts set forth by the United States. Even the letters that the IRS sent to Goldberg, which stated different amounts for the erroneous refund, do not call into question the validity of these facts. The United Stated has conceded that a string of errors by the IRS led to Goldberg's erroneous refund. These past errors, however, do not change Porrata's present calculation that on September 23, 2013, Goldberg owed more to the IRS than the amount of the refund he received. Moreover, these letters are consistent with fact that the IRS did not discover the erroneous refund until September 2014, at which point it began attempting to correct Goldberg's 1994 account and all of the derivative errors. Accordingly, the Court concludes that the September 23, 2013 refund payment made by the IRS to Goldberg was an erroneous refund and that the United States is entitled to recover the full amount of the erroneous refund, totaling $276,658.39.

**D. The United States is Entitled to Collect Interest on the Full Amount of Goldberg's Erroneous Refund**

Next, the United States argues that it is entitled to recover interest on the full amount of the erroneous refund from and after September 23, 2013. Section 6602 of the Internal Revenue Code provides that "[a]ny portion of an internal revenue tax (or any interest, assessable penalty, additional amount, or addition to tax) which has been erroneously refunded, and which is recoverable by suit pursuant to section 7405, shall bear interest at the underpayment rate established under section 6621 from the date of the payment of the refund." 26 U.S.C. § 6602. Given the Court's holding above, the Court concludes that the United States is entitled to recover $276,658.39 from Goldberg, plus interest from and after September 23, 2013, at the underpayment rate set forth in 26 U.S.C. § 6621.

### III. CONCLUSION

In sum, the United States has established that on September 23, 2013, Goldberg had an unpaid balance due to the IRS in the amount of $288,568.75, and that his amount due exceeded the amount of the refund he received on the same date. Therefore, the $276,658.39 refund payment made by the IRS to Goldberg on September 23, 2013 was an erroneous refund. Pursuant to 26 U.S.C. § 7405(b), the United States is entitled to recover the full amount of the erroneous refund, $276,658.39, plus interest from and after September 23, 2013, at the underpayment rate set forth in 26 U.S.C. § 6621. Accordingly, the United States' motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 9, 2018